Exhibit C

1

```
 1              IN THE UNITED STATES DISTRICT COURT FOR THE

 2                         DISTRICT OF HAWAII

 3   UNITED STATES OF AMERICA,    )  CRIMINAL NOS. 03-00221HG
                                  )    & 03-00350HG
 4              Plaintiff,        )  Honolulu, Hawaii
                                  )  March 28, 2005
 5         vs.                    )  2:51 p.m.
                                  )
 6   (01) MICHAEL FARINAS,        )  SENTENCING TO COUNT 1
                                  )   OF THE INDICTMENT AS TO
 7              Defendant.        )  DEFENDANT (01) MICHAEL
     _____)  FARINAS
 8                                   SENTENCING TO THE FELONY
                                      INFORMATION AS TO DEFENDANT
 9                                    (01) MICHAEL FARINAS

10                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE HELEN GILLMOR,
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Government:         LOUIS A. BRACCO, Esq.
                                 Assistant U.S. Attorney
14                               District of Hawaii
                                 Room 6100 - PJKK Federal Bldg.
15                               300 Ala Moana Blvd.
                                 Honolulu, Hawaii 96813
16

17   For the Defendant:          MYLES S. BREINER, Esq.
                                 345 Queen St. Flr. 2
18                               Honolulu, Hawaii 96813

19

20   Official Court Reporter:    Cynthia Tando Fazio, RMR, CRR
                                 United States District Court
21                               P.O. Box 50131
                                 Honolulu, Hawaii 96850
22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

```
 1   MONDAY, MARCH 28, 2005                          2:51 P.M.

 2            THE CLERK:  Criminal Numbers 03-221 and 03-350, the

 3   United States of America versus Michael Farinas.

 4            This case has been called for sentencings.

 5            MR. BRACCO:  Good afternoon, Your Honor.  For the

 6   government Lou Bracco, Assistant United States Attorney.

 7            THE COURT:  Good afternoon.

 8            MR. BREINER:  Good afternoon, Your Honor.  Myles

 9   Breiner on behalf of Michael Farinas, and his family is

10   present.

11            THE COURT:  Good afternoon.

12            Now, we have recently filed, and I got the copy March

13   22nd, of a second sentencing agreement, correct?

14            MR. BREINER:  That is correct, Your Honor.  Should be

15   memorandum of sentencing agreement between the government and

16   Mr. Farinas.

17            MR. BRACCO:  There's only one sentencing agreement,

18   Judge, so it shouldn't be a second sentencing agreement.

19            MR. BREINER:  There was one that was filed sometime

20   ago, that would be the government's position.  I know what

21   you're referring to, November 20th there was a government

22   sentencing statement that was filed regarding super acceptance

23   and other matters.

24            THE COURT:  I'm looking at July 17th, 2003, is that?

25            MR. BREINER:  Memorandum of Plea Agreement.
```

1          THE COURT:  Memorandum of Plea Agreement, that's what
2    I'm talking about.  I'm sorry.
3          MR. BREINER:  I'm sorry.
4          THE COURT:  So we have the new memorandum -- the
5    Memorandum of Sentencing Agreement, the other was the
6    Memorandum of Plea Agreement.
7          MR. BRACCO:  That's correct, Judge.
8          THE COURT:  Okay.  And this really is similar to a
9    plea agreement because you're attempting to establish various
10   factors.  And as I understand this Memorandum of Sentencing
11   Agreement, it is an intention, if it isn't agreed to by the
12   court, that it will be disregarded?
13         MR. BREINER:  That is --
14         THE COURT:  And you can withdraw from the sentencing
15   agreement.
16         MR. BREINER:  That's correct, Your Honor, and then
17   have a contested hearing if necessary.
18         THE COURT:  Okay.
19         MR. BREINER:  We were -- if I may inquire of the
20   court.  Mr. Bracco and I were discussing this during the
21   recess.  What is the court's position regarding the Memorandum
22   of Sentencing Agreement which was filed the other day by the
23   government?  Will the court be accepting the general terms of
24   the sentencing agreement?
25         THE COURT:  Well, it depends.  As I understand what

4

1    Mr. Bracco -- Mr. Bracco, as I understand what you're doing

2    here, you are not going to take responsibility to prove the

3    enhancements that are in the PSR, the government is declining

4    to give proof with respect to the leadership ability and in

5    Michael Farinas' case with respect to the gun.  So the

6    government has said they do not want to put on proof with

7    respect to this.

8         MR. BRACCO:  Well, Judge, I think that -- I don't want

9    to quarrel with the word, but basically what we're doing is

10   forgoing the opportunity to enhance rather than declining to

11   prove because if the court doesn't accept the agreement, of

12   course it's our obligation to come forward with evidence to

13   prove these various things to the extent we can.  And there may

14   be some litigative problems with that, which is why we, rather

15   than to try to overcome those litigative problems, we've

16   entered into the agreement where we would forgo the opportunity

17   to enhance the sentence by these various things.  Whereas the

18   defendant would in turn give up certain arguments and we

19   thought we might reach an agreement that way which would avoid

20   all the litigation.

21        If the court were to not accept the sentencing

22   agreement, then of course we would endeavor to prove the

23   enhancements.  But since much of the proof involves accomplice

24   testimony, number one, we'd have to sort of channel that

25   accomplice testimony, in one case we'd have to -- the person

1    identified as the SOI in the PSR, we'd have to round up that

2    person and assuming he's still round-upable and willing to give

3    the same testimony that at one point he gave in the -- that's

4    incorporated in the presentence report.

5         So yes, we would be ready, willing and able to prove

6    that if the court declined to accept the sentencing agreement

7    and wanted us to proceed in the other fashion, in the

8    alternative fashion.

9         If the court accepts the sentencing agreement, on the

10   other hand, we would give up the opportunity to enhance the

11   base level beyond level 32, which is the admission in the plea

12   agreement, we would give up the opportunity to enhance the base

13   level by leader/organizer status.  And the way the agreement is

14   drafted, in the government's view, I think that would end up

15   with a level 32, minus three for acceptance, and then we take

16   no position with the defendant's prior record or the safety

17   valve, although the government's position would be that both

18   defendants are not eligible for the safety valve.  So

19   ultimately, in the government's view, if the court accepted the

20   agreement, the base offense level would be 29, and as to this

21   defendant the criminal history would be category one.

22        So, that's the way we --

23        THE COURT:  Well, I don't quite understand your

24   position because with respect to the firearm, how do you

25   legally interpret the question of the safety valve, what do you

6

1    consider necessary in terms of the connection of the firearm to
2    the charge with respect to the safety valve?  Because you seem
3    to be saying two different things.  You're saying we're not
4    going to prove that the gun was in connection with the offense,
5    but you do want the benefit of it for the safety valve.
6         MR. BRACCO:  Well, my position would be, Judge, that
7    the defendant is not eligible for the safety valve for a
8    different reason.  I would argue to the court that the
9    defendant is not eligible for the safety valve because indeed
10   he is a leader/organizer of the offense of conviction.  And I
11   don't think that's an inconsistent position to us to say as a
12   matter of the sentencing bargain we're not going to seek the
13   enhancement, but at the same time the defendant can't prove
14   that he is not a leader/organizer.
15        And the reason why I don't think that's inconsistent
16   is because of the burden of proof.  With respect to the
17   enhancement for leader/organizer, the government has the burden
18   of proof and I think we're allowed, if the court accepts that
19   agreement, to bargain that away and say:  Well, we are not
20   going to -- we're not going to seek that enhancement because we
21   have the burden of proof as to that.
22        On the other hand, in the safety valve, the defendant
23   has the burden of proof and I don't believe that he can show
24   that he's not a leader or organizer because if put to proof, I
25   think the result would be the opposite.

1     So I think that by doing it that way it's not
2  inconsistent by reason of the differing burden of proof and I
3  think that that would effectively render the defendant not
4  eligible for the safety valve and then I think we would have
5  the agreement as indicated.

6     THE COURT:  Well, I understand what you're saying
7  about that and then in order to cure that, you then say:  Okay,
8  we'll move for downward departure to get him under the
9  mandatory ten-year minimum.  But it still doesn't answer the
10  question of the gun.  You know, what is your position with
11  respect to the gun?  Even -- you know, there are two aspects
12  here in terms of the five things having to do with the safety
13  valve.  Nobody is disputing that there was a gun found in his
14  room when the search --

15     MR. BRACCO:  I think we've taken the position in the
16  agreement -- let me just double check before I speak.

17     It appears to me now that we haven't addressed the
18  firearm in the agreement.  Unless I'm missing something here.

19     THE COURT:  Well, I don't think you've addressed it
20  other than to say in Paragraph 4, you're agreeing to refrain
21  from addressing -- or from seeking enhancements to the base
22  offense level, which would have been two levels for the gun.

23     MR. BRACCO:  Right.

24     THE COURT:  And that goes over to -- you know, we're
25  looking in Paragraph 45, the specific offense characterization,

8

1    we're looking at United States Sentencing Guideline Section

2    2D1.1(b)(1), which is the two-level increase for a firearm

3    possessed by the defendant.  And the standard in that

4    paragraph, according to the probation office, unless it is

5    clearly improbable that the weapon was connected with the

6    offense.  And then when we flip over to 5C1.2(a)(2), we have

7    the connection -- you know, possessing the firearm in

8    connection with the offense.

9            So there are two different things and the question is

10    how they're connected.  One, you seem to be saying in Paragraph

11    4:  Okay, we're not going to ask for the enhancement, but that

12    doesn't answer the question.

13            MR. BRACCO:  No, right, but I've limited that and

14    that's -- we haven't addressed that because we've limited our

15    agreement not to seek the enhancement to the role in the

16    offense guideline, which is a manager, organizer, leader.  So

17    we haven't addressed the gun enhancement, which is in Paragraph

18    45.  So that would be up to the court whether or not to assess

19    that enhancement or not.  The agreement doesn't deal with that

20    at all.  That's something that you would deal with independent

21    of the sentencing agreement.

22            So we're not saying don't do it, we're not saying do

23    it, we're just saying that's not part of our sentencing

24    agreement.

25            THE COURT:  Well...

1       MR. BRACCO:  Because the sentencing agreement in

2   Paragraph 4 is talking about the drug amounts and then we agree

3   to refrain from seeking enhancements to base offense level and

4   to the level premise, which is the drug quantity, and then to

5   the level -- offense level premised on role in the offense and

6   then we particularly cite guideline 3B1.1, which are the

7   manager/leader upward adjustments.

8       THE COURT:  Do you read this paragraph the same way,

9   Mr. Breiner, that it doesn't deal with the enhancement, the

10  two-point enhancement for the gun?

11      MR. BREINER:  Well, Your Honor, you have me at a

12  disadvantage.  I don't want to look a gift horse in the mouth.

13  The government -- if I can -- I'll answer it this way:  I think

14  the government has suggested they have proof problems.  Now,

15  counsel has used the phrase "litigative" issues, which usually

16  would represent they have proof problems, bringing in other

17  witnesses, albeit the informants and so on, and one way of

18  avoiding all that is for the parties to have reached this

19  agreement.

20      THE COURT:  Well, let's talk about the gun.  I

21  understand, you know, proof problems with respect to the amount

22  of drugs, proof problems with respect to the role in the

23  offense, but I don't see how they're going to have proof

24  problems with respect to the gun depending on what the standard

25  is because you're going to have an agent that can testify they

1    found the gun.

2         MR. BREINER:  There's no question they found a gun.

3    Does the paragraph address it?  It addresses it by not dealing

4    with it.  I think that's what you're getting at with counsel,

5    say why aren't you dealing with it and simply leaving it to the

6    court or, in essence, to defense counsel to argue one way or

7    the other as far as the gun issue.

8         As to --

9         THE COURT:  So you are in agreement that the

10   government has made -- taken no position in this document with

11   respect to the gun and so the enhancement that's in the

12   presentence report is still on the table?

13        MR. BREINER:  Yes.  That was in our discussions with

14   the government, the government decided:  We'll leave it to you,

15   the defense attorney, to argue to the court that the two-point

16   enhancement should not be given.  I concede that, by leaving it

17   open in Paragraph 4 to refrain from seeking the enhancement.

18        Now, push comes to shove, could they prove it?  There

19   are a number of issues that I've discussed with Mr. Bracco that

20   I don't need to address now regarding the proof on the gun.

21        THE COURT:  The gun we're talking about.

22        MR. BREINER:  Correct.  Where it was found, we're

23   not -- the manner in which -- well, where the gun was found,

24   separate from the ammunition, there's also evidence in the

25   reports that were not -- the government's not contesting, I'm

1    certainly not contesting it, the gun was inoperable.  So

2    there's the matters of was it substantially in connection with

3    this case, was it in connection with this offense, was it in

4    connection with this defendant, and in addition to which was it

5    operable.  According to the reports on the 302s -- excuse me,

6    the actual forensic reports, it was not operable.

7          I can see why the government for a variety of reasons,

8    one, because of the extensive cooperation from Mr. Farinas,

9    both Farinas brothers, and how they benefited, the government

10   benefited from their cooperation, why they want to work out an

11   agreement like this.  It's torture to some degree, and I

12   understand the court's concern.  However, we still reach a

13   resolution which I think is appropriate.

14         THE COURT:  Well, Mr. Bracco --

15         MR. BREINER:  If we have to go forward with a

16   contested hearing, which I'd like to avoid, so be it, but it's

17   really the court's prerogative in this matter.

18         THE COURT:  Mr. Bracco, I don't have anything about

19   the inoperableness of the gun before me, do I?

20         MR. BRACCO:  I don't think so, Judge, but Mr. Breiner

21   has been provided with a document as part of the discovery

22   where it says that the -- and I'll read it if he hands it to

23   me -- but it does suggest that the firearm was inoperable.

24         But we support the position of the two points.  We've

25   already filed a sentencing statement saying we think that's a

1   correct assessment and we're not backing off that on the

2   sentencing agreement.  But --

3            MR. BREINER:  I'll be happy to provide it to the

4   court.

5            THE COURT:  Just a second, Mr. Breiner.

6            MR. BRACCO:  May I just read it just so --

7            MR. BREINER:  (Handing document).

8            MR. BRACCO:  This is in the report of the ATF report

9   and it says in Paragraph 7 of that report:  "On October 23rd,

10  2001, Special Agent Lowe," who I believe is Jordan Lowe,

11  "examined the Lawson Model 380 -- 380 caliber semiautomatic

12  pistol," and it recites the serial number, "and determined that

13  it was a firearm as defined in Title 18, United States Code,

14  Section 921.  However, SA Lowe also found that the firearm did

15  not function as designed."  So...

16           MR. BREINER:  Which would tend to indicate that it was

17  inoperable and that's terminology that SA Lowe used.

18           THE COURT:  Mr. Bracco, now, you've brought that to

19  court, or at least Mr. Breiner has brought it to court and

20  bringing that to my attention, but what's standard is that you

21  consider to be appropriate in terms of finding out whether or

22  not this firearm is possessed in connection -- are you in

23  agreement that the 2D1.1(b)(1) provides for a two-level

24  increase if a firearm was possessed by the defendant unless it

25  is clearly improbable that the weapon was connected with the

1    offense?

2         MR. BRACCO:  Yes.

3         THE COURT:  What's the standard and what's the

4    relevance of whether or not it is operable?

5         MR. BRACCO:  I don't know that there's any relevance,

6    Your Honor.  My assessment -- I have not objected to the

7    presentence report, which means that I agree with the provision

8    in Paragraph 45 which assesses the two-level enhancement.  So

9    the government agrees with that.  We agree that the standard --

10   and the reason we agree with it is because the burden is on, as

11   I understand it, is on the defendant to show that once -- once

12   we establish that the firearm is possessed, then the burden is

13   on the defendant to show that it was clearly improbable that it

14   was used in connection with the offense.

15        THE COURT:  So you --

16        MR. BREINER:  I'm sorry, I have to disagree --

17        THE COURT:  Just a moment, Mr. Breiner.

18        MR. BREINER:  My apologies.

19        THE COURT:  So you're in agreement that United States

20   versus Smith, 175 F.3d 1147, Ninth Circuit decision, 1999, is

21   still good law with respect to how that affects the safety

22   valve in terms of that if there is an enhancement, he can't

23   have the safety valve?

24        MR. BRACCO:  I'm not aware of -- I'm not aware of the

25   Smith case per se.  I am aware that if there's an enhancement

1    he can't have the safety valve.

2              THE COURT:  It's that case law that says that.

3              MR. BRACCO:  Right.  And Your Honor has noted that in

4    Paragraph 9 of the plea agreement, I put that in there, I

5    drafted that that way because I anticipated that the court

6    would not find the defendant -- in fact, either defendant for

7    that matter, but since Mr. Pagliarini is here I can say that --

8    but I anticipated the court would not find either defendant

9    eligible for safety valve on a number of reasons.  I've already

10   given the court the first reason, but also for the firearm

11   basis.  So I don't think for a number of reasons either

12   defendant should be found eligible for the safety valve and

13   that's the reason that I didn't address the safety valve in the

14   sentencing agreement because I thought it would create problems

15   and make it less likely that the court would accept the

16   sentencing agreement if I tried to get around what I thought

17   was an obvious block to the safety valve.

18             So, the government's position is that the enhancement

19   is justified, we haven't dealt with it in the sentencing

20   agreement, and defendant should not get the safety valve, but

21   not only for the gun reason but for the organizer/leader reason

22   as well.

23             THE COURT:  And then what is the effect of your --

24   you're going to move for a departure?

25             MR. BRACCO:  Well, the reason I put that in, Judge, is

1    because I felt it would be fundamentally unfair to bargain with

2    the defendant on the basis where the defendant provided some

3    cooperation and -- and still have the mandatory minimum apply.

4    As the court knows, in a case where there's no sentencing

5    agreement and a defendant provides cooperation, once the

6    defendant provides cooperation the government moves to have

7    that cooperation recognized.  The court can go basically

8    anywhere it wants, below the ten or above the ten.

9         So I felt in fairness to the -- both defendants, the

10    court ought to have that option.  So, to the extent that the

11    court may find the guideline range which goes below the ten,

12    then I would move based on substantial assistance, which the

13    defendants have provided, that the court can go below the ten.

14    And to the extent of whatever the range is, for example, my

15    guesstimation would be that if the court followed the

16    recommendation of the presentence report and accepted the

17    sentencing agreement, we would have a base offense level of 32,

18    a three-point adjustment for acceptance, which would bring us

19    to 29.  I don't think the defendants are eligible for the

20    safety valve.  So that means --

21         THE COURT:  Well, they're 29, but then the two-point

22    enhancement would bring it back to 31.

23         MR. BRACCO:  Well, I think the two-point enhancement

24    is already factored into the --

25         THE COURT:  If you're saying 32 --

1        MR. BRACCO:  Oh, I see.  I think I missed -- miss --
2   that's right, Your Honor, it would come back.  It would come
3   back.

4        THE COURT:  Come back up with the points for the gun.

5        MR. BRACCO:  But it still would be below the mandatory
6   minimum.

7        THE COURT:  So that would put you in category one for
8   this defendant, it would put 108 to 135.

9        MR. BRACCO:  That's correct, Judge.  If you -- if you
10  found the gun, that's where it would be.

11       THE COURT:  That's your position?

12       MR. BRACCO:  Yes.

13       THE COURT:  Okay.  Now, Mr. Breiner.

14       MR. BREINER:  Your Honor, that position is very
15  different than my discussions with Mr. Bracco.  Radically
16  different.  The government took the position, our understanding
17  has been from the outset that the government was taking no
18  position on the gun.  Now, that's different than what we've
19  heard today.  Now they're saying they have a position and that
20  wasn't part of our discussion.  In fact it was just the
21  opposite.

22       As I said earlier, I don't want to look a gift horse
23  in the mouth.  That doesn't mean that I should get kicked in
24  the mouth.

25       What I'm hearing now disturbs me because that wasn't

1    part of our agreement.

2         MR. BRACCO:  Judge, let me just say, because I have to

3    -- because Mr. Breiner is correct.  What I was predicting based

4    on the agreement was 29, level 29, but I didn't -- I didn't

5    take a position on the gun because I refused to do that in the

6    sentencing agreement.  So part of what he says is correct.

7    When I was predicting what would be the likely outcome, I was

8    predicting 29, but I didn't say that I wasn't going to take a

9    position on the gun.

10        THE COURT:  But the gun is the elephant in the middle

11   of the room.  I mean, you know, I'm not in a position to ignore

12   the gun.

13        MR. BRACCO:  Right, and I'm not saying that you

14   should.  I'm just -- what I'm saying to Mr. -- and I don't

15   think I've limited myself to take a position --

16        MR. BREINER:  The government is saying that.  The

17   government is saying to the court -- I'm sorry, Mr. Bracco --

18   but the court asked critical questions at the outset:  What are

19   you saying, Mr. Bracco?  And he's been dancing around this

20   issue.  The government is saying to the court:  For reasons

21   that we don't want to disclose that have to do with litigative

22   matters, we're asking the court to follow this agreement with a

23   base offense level of 32, with super acceptance three points

24   and that the defendant be sentenced to a level 29, category

25   one.  Now the court's inquired and asked him to justify some of

1    that and he's back peddled now and conceded:  Oh, it's at level

2    31, that's what I really meant.

3         We never discussed those terms, that was not the

4    issue.  With all due respect to Mr. Bracco, who is a very good

5    attorney and crafted this agreement, we met time and time

6    again, myself, Mr. Bracco, Mr. Pagliarini, that was not

7    discussed.

8         The understanding that we had was that it was level

9    32 --

10        THE COURT:  This is an agreement which takes your

11   client from 262 months to 327 months and you're quibbling

12   over -- you're going down 140 months and you're quibbling over

13   it, Mr. Breiner.

14        MR. BREINER:  I'm sorry you have that impression,

15   Judge.  I'm not quibbling, what I'm doing is --

16        THE COURT:  Well, that's where you are.  I mean you

17   may be right about everything that you're saying in the sense

18   that this isn't something that you folks have discussed, et

19   cetera, but from the point of view of the presentence report,

20   this is a major, major boon to your client.

21        MR. BREINER:  I recognize that and I'm not quibbling,

22   not when I'm holding the government -- the government's feet,

23   as it were, to the flame saying:  This is what we talked about,

24   this is what was discussed --

25        THE COURT:  Okay.  But --

1          MR. BREINER:  -- and then when the court questions the

2     government, the government back peddles and says:  You know,

3     Your Honor, you're right, we got it all wrong --

4          THE COURT:  Well, now, hang on a second, Mr. Breiner.

5     I think what is happening here is we have some considerations

6     at sentencing and the government can take a position, but it

7     doesn't bind the court.  And there are answers that I must make

8     to the facts in this case and when that is put out on the

9     table, the government can take whatever position it wants.  I

10    still have to make this decision.  And I think Mr. Bracco is

11    recognizing that on the factors that are here in this

12    presentence report, and I don't know what other evidence is

13    going to be put on today, but the gun is a factor in

14    sentencing.

15         MR. BREINER:  And our position is that the government

16    recognized that there was a problem with proof on the gun

17    issue, but rather than getting engaged on that proof issue they

18    simply left the defense to argue to this court why the gun

19    enhancement should not be given.

20         THE COURT:  So would you like to withdraw from the

21    sentencing agreement, Mr. Breiner?

22         MR. BREINER:  Certainly not.  No, the sentencing

23    agreement I want to adhere to because my client obviously

24    benefits from it.  And I don't want the court to think that I'm

25    being miserly about it or quibbling, as you -- as you

1    appropriately stated.  Just the opposite.  I'm fighting for

2    every month in addition to the time that my client's already

3    done.  I'm fighting to hold the government to its proof.

4         The government's conceded there are certain things it

5    can't prove.  On the issue, for example, the adjustment role in

6    the offense, they have proof issues.  We're not going to fight

7    about that.

8         THE COURT:  I don't think that's a --

9         MR. BREINER:  And the government has told the court,

10   and you cited the paragraph, the government concedes if the

11   court does not do this, then we're going to move for a downward

12   departure to appropriately get -- give Mr. Farinas and his

13   brother the appropriate credit the government believes they're

14   due for their cooperation.  Fine.

15        They've left it open, at least until now, on the issue

16   of the gun.  The position that was told to -- expressed to

17   myself and to Mr. Pagliarini was very clear:  We will take no

18   position.

19        Now, because of your inquiry, the government's decided

20   to take a position.

21        MR. BRACCO:  No, that's not really correct.

22        MR. BREINER:  That's what I heard.  I'm not -- please,

23   please don't interrupt me.

24        It sounds like that's the position the government has

25   taken, that now they do have a position because they don't want

1  to, for whatever reason, alienate the court or suggest a
2  contrary result to the court's conclusion.
3          THE COURT:  I would put another characterization on
4  it.  I have to decide about the gun.
5          MR. BREINER:  Yes.
6          THE COURT:  I need all of the information about the
7  gun.  It's here.  It's something that's present in this case
8  and it is relevant to the safety valve.
9          MR. BREINER:  Correct.
10         THE COURT:  It is not possible not to decide about the
11  gun.
12         MR. BREINER:  Then -- then perhaps the way to deal
13  with this issue, since it is critical --
14         THE COURT:  You know, Mr. Breiner, it may look
15  critical to you, but realistically I'm not bound by the
16  sentencing guidelines anymore.
17         MR. BREINER:  Yes, ma'am.
18         THE COURT:  And I'm certainly bound by the mandatory
19  minimum of ten years.
20         MR. BREINER:  I want to get below that, obviously.
21         THE COURT:  But I've got to tell you that you don't
22  have a lot of chance from everything I've seen here getting
23  below it.  So whether or not he does this or not, your clients
24  have -- your client has a very serious charge and looking at
25  it, I think you have made great inroads with the government.

1  Terrific inroads with the government.

2        But I have to sentence an awful lot of people and your

3  clients are definitely in the category of more serious drug

4  dealers than many, many, many, many, many people that I see.

5  And so the ten-year mandatory minimum does not seem to me to be

6  an inappropriate place for your client to be.

7        And whether or not Mr. Bracco waives it or not, it

8  does not mean that I am going to see it as something where I'm

9  going to go below that in any kind of substantial way.  I have

10  to look at the whole case.  I have to take this case and

11  compare it to all of the other cases I see, 195 in a year, and

12  your clients are among the more serious people that I see in

13  terms of what I have before me.

14        So for all of the, you know, efforts that have been

15  made here, it looks to me, you know, 140 months looks like a

16  major, major accomplishment on your part.  And I think that

17  your clients would be extremely well served by you to get 120

18  months -- your client, singular.

19        So, we're going to go forward to the extent that there

20  is agreement that the sentencing agreement stands.  I leave it

21  to you folks --

22        MR. BREINER:  The government, I understand -- I'm

23  sorry to interrupt -- but the government's taken the position

24  if the court -- and I understand what you're saying to me.

25  You've now switched gears and now it's -- the burden is on me,

1    am I going to fight you on this?  No, I won't.  I'm not going

2    to fight the government's generous offer of 140 months.  I

3    recognize what my client -- the benefit he's getting.

4         On the other hand, there is an agreement and the

5    government is inclined -- or, excuse me, the government has in

6    essence contracted by this agreement to file -- or to move for

7    a Motion for Downward Departure.

8         THE COURT:  But, you know, it doesn't really -- my

9    point is, I have to decide about the gun and everything in

10   terms that I have before me, other than this about the

11   inoperable, everything that I have before me indicates that the

12   gun is something that should be counted.  I don't really have

13   an awful lot of other information.

14        I mean if you folks want to litigate that and put a

15   lot of information before me, fine, but you haven't even

16   bothered to tell me prior to today during the hearing that the

17   gun was inoperable.  And the gun is relevant in two ways.  One,

18   the increase for two points.  And two, the safety valve.

19        I always have to decide if there's a gun.  I don't

20   have a lot of choice on that.  And it may be that that wasn't

21   something in terms of, when you're making your deal, you really

22   thought about the fact that the court is required to make those

23   decisions.  You know, I have to do it based on the information

24   I have before me.  And at this point I've got the information

25   that it was found in his room while he also had, you know,

1    drugs in his room that he was dealing.  So you've got a real

2    big burden to overcome there because there has to be, and the

3    term is clearly improbable.  And that's what the case law --

4    the case U.S. v. Smith says and that's why I'm bringing it up

5    because clearly improbable is a pretty heavy burden.

6           MR. BREINER:  Could we have a recess, please, so I can

7    discuss this with my client?

8           THE COURT:  Well, here's the problem:  I don't have a

9    problem with you having a recess, Mr. Breiner, and you can have

10   a recess, but Mr. Pagliarini and Mr. Barbee, we're sort of

11   stacking up like cordwood here.  So what I'd like to do is take

12   a recess with your case and deal with Mr. Barbee's case.

13          Is the prosecutor for your case here, Mr. Barbee?

14          MR. BARBEE:  No, Your Honor, but I expect him any

15   minute.  He knows it's at 3:30.

16          THE COURT:  Okay.  So, I think we could at least deal

17   with --

18          MR. BREINER:  I just need five minutes.

19          THE COURT:  -- the last case -- you can have -- you

20   can have time, you can have as much time as you want,

21   Mr. Breiner.  I'm just trying to be productive myself while --

22   so, if you want to, you know, go out into the hallway with the

23   marshals for your client and you can talk with him --

24          MR. BREINER:  Well, I also need to speak with

25   Mr. Pagliarini and I need to speak with Mr. Bracco.  So, I need

1  more than a few minutes.  I want to address this problem with

2  my client whether or not we're going to have a contested

3  hearing and put all of this aside or move forward with today's

4  sentencing.

5         THE COURT:  Well, we can give you another time if you

6  want.

7         MR. BREINER:  No, I want to deal with this today.

8         THE COURT:  Okay.  Well --

9         MR. BREINER:  At your pleasure.

10        THE COURT:  Okay.  Well, my pleasure is to, I will

11 recess until Mr. Barbee's -- the prosecutor in Mr. Barbee's

12 case comes and then we'll deal with that.

13        THE CLERK:  Your Honor, the prosecutor is Mr. Thomas,

14 and Mr. Thomas is --

15        MR. BREINER:  He's waiting for me across the hallway.

16        THE CLERK:  Before Judge Mollway.  He has a sentencing

17 at 3 o'clock.

18        THE COURT:  Why don't you go and get Mr. Thomas and

19 we'll quickly do Mr. -- you don't have your client here, right,

20 Mr. Barbee?  You're doing this without your client?

21        MR. BARBEE:  He's downstairs.

22        THE COURT:  He's downstairs.  Okay.  So we will have

23 to -- okay.  Well, so much for trying to be efficient.  It's

24 just not going to work.

25        Okay.  We'll just take it -- we'll get to yours in due

1    time, Mr. Barbee.  Sorry I can't expedite it.

2         MR. BREINER:  Most importantly I need to speak with my

3    client about proceeding in light of what you've said that you

4    are going to give him or -- you're inclined to give him the

5    statutory minimum, which is ten years, 120 months.  I don't

6    want to forgo his rights to have a contested hearing and I want

7    it to be clear.

8         THE COURT:  And it's perfectly okay with me if you

9    want to withdraw from the sentencing agreement and have a

10   contested hearing, that's fine, too.  It's totally up to you

11   folks.  But you have to recall, both of you, that I have to

12   make a decision on the facts that are before me and that gun is

13   certainly before me.

14        Okay.  We will take -- let's take a five-minute

15   recess.  After five minutes you can let me know whether or not

16   you want to go forward today or not.

17        MR. BREINER:  That's fine.  Thank you.

18        THE COURT:  We stand in recess.

19   (A recess was taken from 3:26 p.m. to 3:35 p.m.)

20        THE COURT:  We're back on the record.

21        Mr. Bracco, Mr. Breiner and the defendant Michael

22   Farinas are present in court.

23        Mr. Bracco -- Mr. Breiner, you've had an opportunity

24   to consult with your client?

25        MR. BREINER:  Yes, thank you for the opportunity to

1    discuss the matter with Mr. Farinas.  And Mr. Farinas -- excuse
2    me.  After discussing the various options that Mr. Farinas has
3    and the court has generously offered to allow him to withdraw
4    from the agreement, to proceed to a contested hearing, facing
5    the possibility, without quibbling over months of -- and a
6    greater sentence, Mr. Farinas has decided to go forward with
7    the sentencing.  I understand the court's position is to limit
8    the sentence -- or to place a statutory minimum on Mr. Farinas
9    at the 120 months; is that correct?

10        THE COURT:  No, that's not correct.  As I understand
11    the government's position, they believe that the Memorandum of
12    Sentencing Agreement does not cover the gun question.  And the
13    gun question is one that has to be decided by the court because
14    it is before the court, it's in the presentence agreement I
15    have information about and I have to decide it, and that will
16    affect level.  And if you take the position that the sentencing
17    agreement binds the government to a level 32 minus three and
18    the gun -- they agreed on the gun in the sentencing agreement,
19    then you don't actually have an agreement about what it says.
20    And so if that's -- if that's true, if you're not -- if you
21    both don't think it says the same thing, I can't very well
22    accept it.

23        MR. BREINER:  We -- we are in agreement, Your Honor.
24    The government -- we have agreed the government is bound to
25    level 32.  That they've given Mr. Farinas the additional point

1    for super acceptance to a level 29.  As to the issue of role in
2    the offense, the government is taking a position that -- well,
3    they're not going to look for an increase based on the role in
4    the offense.

5         As for the gun matter, the government is remaining
6    silent.  That's in the agreement.  It's reflected in, I
7    believe, Paragraph 4 and again in Paragraph 10, leaving it to
8    the defense to argue to the court whether or not he's eligible
9    for safety valve consideration.

10        THE COURT:  So, your position is that you both
11    interpret the sentencing agreement the same way.  You're not
12    happy with it --

13        MR. BREINER:  That's correct.

14        THE COURT:  -- but you do agree that that's a proper
15    interpretation?

16        MR. BREINER:  Correct.  Now, what --

17        THE COURT:  Now, let me go on from there.

18        Now, the government has said that they want to move
19    for a downward departure to get rid of the mandatory minimum of
20    ten years, and I have no problem with them doing that.  My
21    point is, in looking at your client, the government can move
22    and get rid of the statutory mandatory minimum, and that's fine
23    and it disappears and I'm not saying it reappears, but what I
24    am saying is, ten years seems like a reasonable sentence in
25    comparison to other people who have done what your client has

1    done, even considering the help because without that you

2    started out at 262 to 327 months.  And no, I'm not saying that

3    the mandatory minimum is in place.  I'm certainly not saying

4    that.  What I am saying is that when I look at the guidelines,

5    when I look at what I have here, since I'm not limited by the

6    guidelines at this point, the ten years seems about right.  Not

7    because of the mandatory minimum, but because of comparison to

8    other people in your client's position.

9           MR. BREINER:  Uh-huh.

10          THE COURT:  It's -- it looks like actually an

11   excellent sentence from the point of view of your client and

12   what the evidence is with respect to what they were doing for

13   over a period of time, et cetera.

14          So, no, it's not that I'm reinstating the mandatory

15   minimum, I'm just saying that I don't think it's realistic

16   given what we're talking about here in terms of the evidence

17   that I do have before me.  And we can have an evidentiary

18   hearing.  You can put on whatever you want, the government can

19   put on whatever you want.  But with respect to the gun, nobody

20   is disputing that there was a gun in his room while he had

21   drugs in the room and while he was dealing drugs.

22          So, looks like the safety valve doesn't apply and it

23   looks like two points.  And, you know, if you folks want to put

24   on evidence about it, in addition to what I have, that's fine.

25          MR. BREINER:  Your Honor, you may have confused the

1    case involving Elmer Farinas with Michael Farinas.  There were

2    no drugs found in Mr. Farinas' room.

3        THE COURT:  Okay.  Well, he's confessed to dealing

4    drugs, let's put it that way.

5        MR. BREINER:  That's correct.  But it seems that

6    intrinsic in your analysis --

7        THE COURT:  Well, let me retract that from drugs in

8    the room.  Let me just say that he has confessed to dealing

9    plus 50 grams.  There are other comments in here with respect

10   to other amounts that the government chooses not to prove in

11   terms of over a period of time the amount of drugs that the

12   informants, et cetera, say that your client dealt with.  I

13   don't think you are disputing that he was dealing drugs, at

14   least 50 grams.

15       MR. BREINER:  I'm not disputing that, Your Honor.  And

16   perhaps if the government would first make its Motion for

17   Downward Departure, then I can address the appropriateness of a

18   ten-year or less than a ten-year sentence.  I understand what

19   the court has said and I'm not disagreeing with your analysis

20   of the agreement.  We are in agreement, the government and

21   defense, as to the terms of the Memorandum of Sentencing

22   Agreement.  And the issue of the gun I am not going to address

23   at this time.

24       THE COURT:  Okay.  And basically, to the extent that

25   the guidelines are advisory, the court still has to compare

31

1    this to other people.

2            MR. BREINER:  I understand.  I --

3            THE COURT:  Okay.

4            MR. BREINER:  But did -- would the court take into

5    consideration that yes, you've sentenced hundreds of people,

6    you've had an opportunity to review hundreds of presentence

7    reports.  The government has also had time -- or the government

8    has prosecuted thousands of cases or hundreds of cases, and if

9    the government is making a Motion for Downward Departure to get

10   below the statutory minimum of ten years, there has to be a

11   reason behind that.  And I would submit the reason is that they

12   feel it's appropriate in light of his cooperation and in light

13   of other defendants in other cases they've had.

14           THE COURT:  And that very well may be Mr. Bracco's

15   position, but Mr. Bracco is the prosecutor and I'm the judge.

16           So, the first thing that we need to do is deal with

17   the sentencing agreement and make sure that your client

18   understands that just the way we would with the -- a plea

19   agreement because it is very similar to a plea agreement.  If

20   you want to go forward, that's what we will do now.

21           MR. BREINER:  We are going forward.

22           THE COURT:  Okay.

23           MR. BREINER:  My client and I have discussed it again

24   during the recess and he wants to go forward with the

25   sentencing agreement.

1          THE COURT:  Okay.  Mr. Farinas, if you would rise,

2   please, I have several questions to ask you.

3          Now, have you reviewed the presentence report and

4   the -- just a second --

5          MR. BREINER:  Which document are you referring to, the

6   most recently filed -- the Memorandum of Sentencing Agreement

7   filed by the government on the 22nd?

8          THE COURT:  No, first I'm -- I am asking if you

9   reviewed the presentence investigation report, 3/14/05, with

10  Mr. Breiner.

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  Okay.  You've reviewed that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Has he answered all your questions about

15  that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Okay.  Now I'm turning to the Memorandum

18  of Sentencing Agreement.  And you have that document in front

19  of you?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Okay.  Have you read it?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And have you talked about it with

24  Mr. Breiner?

25         THE DEFENDANT:  Yes.

1       THE COURT:  Do you understand it?

2       THE DEFENDANT:  Yes.

3       THE COURT:  Has he answered all of your questions

4   about it?

5       THE DEFENDANT:  Yes, Your Honor.

6       THE COURT:  And did you sign it on March 22nd

7   indicating your agreement?

8       THE DEFENDANT:  Yes.

9       THE COURT:  Is that your signature on there?

10       THE DEFENDANT:  Yes.

11       THE COURT:  Okay.  And, Mr. Breiner, you have gone

12   over this with your client?

13       MR. BREINER:  Yes, Your Honor.

14       THE COURT:  And you're convinced that he understands

15   it?

16       MR. BREINER:  Yes, Your Honor.

17       THE COURT:  And you're in agreement with its terms,

18   and you signed it indicating that?

19       MR. BREINER:  Yes.

20       THE COURT:  Okay.  Thank you.

21       Now, you can be seated.  Thank you.

22       There are objections to the presentence report by the

23   defendant, as I understand it, with respect to role in the

24   offense and the gun.  Correct, Mr. Breiner?

25       MR. BREINER:  That is correct.

1    THE COURT:  Okay.  Now, the Memorandum of Sentencing

2    Agreement takes care of the role in the offense in the sense

3    that the government is not going to try to prove it for

4    purposes of increasing the offense level.

5    MR. BREINER:  That is correct.

6    THE COURT:  Okay.  And the court accepts that with

7    respect to the offense level.

8    As for the gun, the government is not taking the

9    position that that is not a -- an improper increase as is found

10   by the probation office, the two points for the gun.  Anything

11   you want to say about that?

12   MR. BREINER:  I believe we've already explored this

13   matter, Your Honor.  The government has taken a position of

14   silence, refraining from advocating one way or the other --

15   THE COURT:  Well, I think what the government has said

16   is they support what's in the presentence report.  Is that

17   correct, Mr. Bracco?

18   MR. BRACCO:  Yes, Judge.  At the time that we filed

19   our sentencing statement, we did not object to that.  So we

20   don't think it's improper.  I'm not pushing for it.  I'm

21   leaving it up to the court.

22   THE COURT:  But you support what is in the presentence

23   report?

24   MR. BRACCO:  I -- I believe --

25   THE COURT:  You believe that's correct?

1          MR. BRACCO:  I believe that's correct.  I believe

2     there's no inaccuracy by that application.

3          THE COURT:  Okay.  Thank you.

4          Mr. Breiner?  Is there anything else you want to say

5     about that?

6          MR. BREINER:  I rely upon what Mr. Bracco drafted,

7     what we discussed at great length, what he researched.  What

8     was worked over repeatedly between three attorneys, myself, Mr.

9     Pagliarini and Mr. Bracco, that he would take no position.  It

10    comes as a surprise today that he is taking a position.

11         At the -- at the urging of the court you've asked

12    Mr. Bracco to take a position and his position is an

13    interesting duality.  Yes, he admits he wrote this document,

14    drafted it and it says he'll refrain from taking a position; on

15    the other hand, yes, he says that he agrees with the

16    presentence report adding two points.

17         THE COURT:  I -- as I understand, and this is the last

18    time I'm doing this -- the sentencing agreement doesn't deal

19    with the gun.

20         MR. BREINER:  That's correct.

21         THE COURT:  And Mr. Bracco did not object to the

22    presentence report.  He believes that it is accurate.  The

23    sentencing agreement didn't deal with the gun.

24         MR. BREINER:  Yes.

25         THE COURT:  So his agreeing with the presentence

1  report does not seem inconsistent to me.  And if you are -- you

2  know, you say "at the urging of the court," yes, the court is

3  required to decide these factors and I do want to hear from

4  both sides in terms of this being an adversary system, yes, I

5  do inquire of both attorneys as to their position.

6          So if you have a problem with that, Mr. Breiner, now

7  is the time to say so.

8          MR. BREINER:  I'm sorry, I don't have a problem with

9  this court, Your Honor.

10          THE COURT:  No, I don't mean the court, just the fact

11  that we have to decide the gun question.  He's in agreement

12  with the fact -- with the presentence report which is not in

13  the sentencing agreement.

14          MR. BREINER:  Understood.  I concede that, I recognize

15  that and I've said that.

16          THE COURT:  Okay.  Now, any other objections,

17  Mr. Breiner?

18          MR. BREINER:  Other than what I filed in the

19  statement, no.

20          THE COURT:  Okay.  This is your last opportunity and

21  in terms of what you filed and stated you've got to orally

22  state it now if you want me to rule on if that's the point.  So

23  do you have anything else that you are objecting to in the

24  presentence report?

25          MR. BREINER:  No, other than the gun enhancement.

1          THE COURT:  Okay.  And you are objecting to that.  I
2     understand you are objecting to that.
3          MR. BREINER:  Yes.
4          THE COURT:  But you don't care to say anything more
5     about it, correct?
6          MR. BREINER:  No, Your Honor, I don't care to say
7     anything more.
8          THE COURT:  Okay.  Okay.
9          Now, I am adopting the presentence report with the
10    exception of Paragraph 49, which added four points for the
11    organizer or leader, which would have raised the level by four
12    points.
13         In addition, I am modifying Paragraph 44 to conform
14    with the Memorandum of Sentencing Agreement which starts at 32
15    rather than 36.  So that is an eight-point benefit that the
16    sentencing agreement has given the defendant and I am in
17    agreement with that.
18         Now, otherwise, the court adopts the factual
19    statements contained in the presentence investigation report to
20    which there is no objection.  And as to the controverted
21    factual statements, I believe I have already resolved those.
22         And you can sit down, Mr. Breiner.  Thank you.
23         At this time the court is placing the presentence
24    report in the record under seal.  If an appeal is taken,
25    counsel on appeal may be permitted access to the sealed report

1  with the exception of the recommendation section.

2          And there is a plea agreement in this matter and the
3  court is satisfied that the agreement adequately reflects the
4  seriousness of the actual offense behavior and that accepting
5  the plea agreement will not undermine the statutory purposes of
6  sentencing and it is accepted.

7          The court notes that there are a number of letters in
8  support of Mr. Michael Farinas and the court has read those and
9  will take those into account.

10         Now, the court finds the following sentencing
11  guidelines that are advisory, and the court notes that the
12  sentencing guidelines are advisory, but they are of help to the
13  court in terms of ensuring that the court will consider all of
14  the factors that have been considered by the sentencing
15  commission in reviewing cases across the country and the policy
16  decisions that have arisen out of that. And the court finds
17  the sentencing guidelines helpful to ensure that all of the
18  factors that should be considered are brought to the court's
19  attention and the assistance that the sentencing guidelines
20  give in getting consistent sentences throughout the country.

21         And we have a total offense level of 31, and that is
22  32 minus three, plus two for the gun.

23         So, the court finds that the defendant has a criminal
24  history category of one, and that he is not eligible for the
25  safety valve because of the fact that the gun was found in the

1    defendant's room when the search warrant was executed and he

2    was a dealer in crystal methamphetamine at that time.

3          So, offense level one, category level -- category one

4    and the offense level is 31, that is a range of 108 to 135

5    months, and that is for both the indictment and the

6    information.  Probation is not authorized.  The suggested

7    supervised release is five years for the indictment and three

8    years for the information.  So that would be a total of five

9    years.  And -- concurrently served.

10         And then the fine range is 25,000 to $4 million.  And

11    restitution is not applicable and there's a special assessment

12    for each count for a total of one hundred -- $100 per count for

13    a total of 200.

14         Now, this is your opportunity to speak to sentencing,

15    Mr. Breiner.

16         Yes?

17         THE PROBATION OFFICER:  Your Honor, I would just like

18    to correct the --

19         THE COURT:  Okay.

20         THE PROBATION OFFICER:  -- guideline range.  The

21    imprisonment range would be 120 to 135 months due to the

22    statutory mandatory minimum.

23         THE COURT:  Well, okay, thank you.

24         Mr. Bracco has made a Motion for Downward Departure,

25    it's part of the sentencing agreement.  I have accepted the

1    sentencing agreement.  As part of the sentencing agreement he

2    has moved for a Motion for Downward Departure that would put us

3    below the mandatory minimum of 120 months.  So that Motion for

4    Downward Departure gets us below the 120, but perhaps you're

5    right, I have to say that the range is 120 until I grant the

6    Motion for Downward Departure, which I am granting.  You know,

7    it's part of the sentencing agreement, so since I accepted the

8    sentencing agreement up-front I think it's -- it's just which

9    way you look at it.  But we get in the same place eventually.

10              THE PROBATION OFFICER:  And, Your Honor --

11              THE COURT:  So, Mr. Breiner.

12              THE PROBATION OFFICER:  I'm sorry, Your Honor --

13         MR. BREINER:  Thank you, Your Honor.

14              THE COURT:  Yes?  Just a second.  Yes?

15              THE PROBATION OFFICER:  Fine range is also 15,000 to

16    150,000 if the total offense level is 31.

17              THE COURT:  Oh, thank you.  So what is that again?

18              THE PROBATION OFFICER:  15,000 to 150,000.

19              THE COURT:  To 150,000.  That's if it's 31.

20              THE PROBATION OFFICER:  Correct.

21              THE COURT:  Okay.  That's right.  Because we had a 39

22    and that's quite a bit higher.

23              So, I am amending what I said for the fine range of

24    15,000 to $150,000.

25              Okay.  Mr. Breiner.

1    MR. BREINER:  Thank you.  Your Honor, first off, thank

2   you for granting the Government's Motion for Downward

3   Departure.  I was waiting for the government to make the

4   motion, but since you took the --

5    THE COURT:  Well, they made it in the sentence --

6   well, you want to put it on the record, Mr. Bracco?

7    MR. BRACCO:  Just to avoid any confusion, I so move

8   pursuant to Paragraph 9 of the sentencing agreement.

9    THE COURT:  And in having accepting the sentencing

10  agreement I grant the Motion for Downward Departure.

11    MR. BREINER:  Thank you.  That's why I was waiting,

12  there was an element missing.  Thank you, Judge.

13    THE COURT:  Okay.  Thank you.

14    MR. BREINER:  All right.  Since the range we're

15  looking at, and I agree with it and I appreciate the

16  Government's Motion for Downward Departure in light of the

17  agreement that we had agreed -- we had reached sometime

18  earlier.

19    As far as the range, 108 to 121, I ask the court to

20  give the low end of 108.  I think it's appropriate.  I

21  understand the message that you want to send.

22    You regard Mr. Farinas as, if I understand correctly,

23  as more culpable than many that you've seen in light of his

24  involvement.  On the other hand, the government, I believe, has

25  made a balanced decision that his cooperation was fruitful,

1  that it provided the government such sufficient information

2  that they were willing to enter into this type of agreement,

3  especially in light of the amount of drugs that were involved

4  with Mr. Farinas and his brother Elmer.

5          I'm asking, again, the 108 is still a substantial

6  sentence.  Mr. Farinas has been in custody now for 22 months.

7  He still has a substantial amount of time ahead of him.  Even

8  with good time he is still looking at well over eight years of

9  additional incarceration.

10          I have nothing further on that matter.

11          THE COURT:  Thank you.  Now, Mr. Farinas, this is your

12  opportunity to address the court.  Is there anything you want

13  to say about yourself or about the crime which you committed,

14  this is your opportunity to do so.

15          THE DEFENDANT:  Your Honor, I would just like to say I

16  do take full responsibility for the charges against me.

17          THE COURT:  Could you get a little closer to the mike?

18  Thank you.

19          THE DEFENDANT:  I made a terrible mistake when I got

20  involved with these drugs and because of my mistake I've hurt

21  my family, my friends, myself and also the community.

22          I regret what I've done and I am ashamed of what I've

23  done.  Being incarcerated for 20 months has helped me clear my

24  mind from all the negative I had.  I've used my time wisely.

25  I've educated myself by getting my diploma and a few

1    certificates.  To me it's my big step I need for a positive

2    mind.  I can never see myself being idle or being the way I

3    was.  I can only see myself going forward and being positive in

4    everything I do.

5         Your Honor, I would like to say sorry to the

6    community, sorry to my friends, family.  They've been there for

7    me through everything and I'm just sorry.

8         THE COURT:  Thank you.  Mr. Bracco?

9         MR. BRACCO:  Yes, Your Honor, we make no

10   recommendation within the range that the court has found, but I

11   do want to just take a moment to apologize to the court and

12   Mr. Breiner.

13        I did in adding up these things, perhaps in the

14   confusion with the co-defendant Elmer Farinas, who doesn't have

15   a gun, I forgot to add the gun back in when I was

16   prognosticating what the range would be and that's how I think

17   I ended up with 29.  So I just wanted to mention that and

18   apologize to the court and apologize to Mr. Breiner that my

19   math was bad.

20        But with respect to an amount in the range, we have no

21   recommendation.

22        THE COURT:  Thank you.

23        The court looks at this case in the new light after

24   Booker.  And with respect to the burden on the government after

25   Booker, in terms of the proof of the other drugs which other

1    people have attributed to Mr. Farinas, he would, before Blakely

2    and Booker, have been looking at a range of 262 to 327 months.

3    And that is something that would have been more than twice as

4    much of the sentence that he's facing at this point.

5         And as I indicated earlier, the sentencing guidelines

6    are advisory at this point and I have to look at this compared

7    to other people that have received the -- a sentence of 120

8    months or in this range.  And there are people who have

9    received that who have done much less in terms of the amount of

10   drugs than Mr. Farinas.  And the fact of having a gun on the

11   premises while he was engaged in dealing with drugs is

12   something that has been looked at in terms of a policy as a

13   factor that should be taken into consideration and given him a

14   more serious sentence.

15        Now, the sentence that we are looking at here, 108 to

16   135, I don't have a problem with 110 months for a round figure.

17   But this is a very serious crime.  The amount of damage that's

18   been done to the community in terms of the number of people

19   whose lives have had drugs induced into them, the people who

20   have -- whose families have been damaged by the amount of drugs

21   introduced have to be considered.  I have to weigh those

22   factors in terms of the harm that has been done to other

23   people.  And I am sure that Mr. Farinas is very remorseful at

24   this point about what happened, but there has to be some kind

25   of a balance in terms of the community and what has been

45

1  inflicted on the community by his activities.

2       So, 110 months as to both the indictment charge and

3  the information charge, and those terms are to be served

4  concurrently.  Five years as to supervised release, five years

5  for the indictment and three years for the information, and

6  those terms will be run concurrently.  I'm not going to impose

7  a fine because I don't believe he can pay a fine.  Restitution

8  isn't applicable and there's a special assessment of $100 per

9  count for a total of 200.

10       And the court did find that he was not eligible for

11  the safety valve.

12       Now --

13       MR. BREINER:  Your Honor, I'm sorry to interrupt.  We

14  did not have a chance to make a request for the 500-hour drug

15  program.  I wanted to request that.  My apologies.

16       THE COURT:  Okay.  Right now, though, I want to deal

17  with the conditions.

18       One, the defendant shall abide by the standard

19  conditions of supervision.

20       Two, the defendant shall not commit any crimes,

21  federal, state or local.

22       Three, the defendant shall not possess any illegal

23  controlled substances.

24       Four, the defendant shall refrain from any unlawful

25  use of a controlled substance and the defendant shall submit to

1   one drug test within 15 days of release from imprisonment and

2   at least two drug tests thereafter as directed by the probation

3   office.

4          Five, the defendant shall cooperate with the

5   collection of DNA as directed by the probation office.

6          Six, the defendant shall participate in a substance

7   abuse program, which may include drug testing at the discretion

8   and direction of the probation office.

9          Seven, the defendant shall not possess a firearm,

10  ammunition, destructive device or any other dangerous weapon.

11         Eight, the defendant shall provide the probation

12  office access to any requested financial information.

13         Nine, the defendant shall submit his person,

14  residence, place of employment or vehicle to a search conducted

15  by the U.S. Probation Office at a reasonable time --

16         MR. BREINER:  I'm sorry.

17         THE COURT:  Well, if you want to finish what you're

18  doing.  I want him to hear what I'm telling him.

19         MR. BREINER:  No, I was listening, Your Honor, please.

20         THE COURT:  Well, go ahead if you -- if you have

21  something you want to say to him, go ahead.  I do want him to

22  hear what I am saying, too.  Okay?

23         MR. BREINER:  Please continue.

24         THE COURT:  The defendant -- number nine, the

25  defendant shall submit his person, residence, place of

1    employment or vehicle to a search conducted by the U.S.

2    Probation Office at a reasonable time and in a reasonable

3    manner based upon reasonable suspicion of contraband or

4    evidence of a violation of a condition of supervision.  Failure

5    to submit to a search may be grounds for revocation.  The

6    defendant shall warn any other resident that the premises may

7    be subject to search pursuant to this condition.

8         And last, the defendant shall submit a sample of his

9    DNA to the Bureau of Prisons when requested.

10        Now, either counsel know of any reason why the

11   sentence as stated should not be imposed?

12        MR. BRACCO:  Government does not, Your Honor.

13        MR. BREINER:  Defense does not.

14        THE COURT:  The sentence as stated is imposed.  And

15   you may appeal your conviction if you believe that your guilty

16   plea was somehow unlawful or involuntary or if there's some

17   other fundamental defect in the proceeding that was not waived

18   by your guilty plea.

19        You also have a statutory right to appeal your

20   sentence under certain circumstances, particularly if you think

21   the sentence was contrary to law.

22        You have entered into a plea agreement which waives

23   some of your right to appeal the sentence itself.  Such waivers

24   are generally enforceable.  But if you believe the waiver is

25   unenforceable, you can present that theory to the appellate

1    court.  With few exceptions, any Notice of Appeal must be filed

2    within 10 days of judgment being entered in your case.  If

3    you're unable to pay the cost of an appeal, you may apply for

4    leave to appeal in forma pauperis.  If you so request, the

5    Clerk of the Court will prepare and file a Notice of Appeal on

6    your behalf.

7            Now, I will ask that you get the 500-hour drug

8    treatment and educational and vocational opportunity.

9            Is there a request with respect to any particular

10   location?

11        MR. BREINER:  Yes.  Mr. Farinas has informed me his

12   first choice to be Sheridan and his second choice would be

13   Lompoc.

14        THE COURT:  Okay.  Now, I don't think there are any

15   counts to be dismissed, correct?

16        MR. BRACCO:  There are none.  I do have, though, the

17   original copy of the sentencing agreement.  Does the court want

18   that filed?

19        THE COURT:  Yes, please.  Yes, please.  And why don't

20   you identify your signatures, Mr. Bracco for --

21        MR. BRACCO:  Yes, my signature appears twice on the

22   agreement.  Once for myself and once for Mr. Enoki.

23        THE COURT:  Okay.  If you would file that,

24   Mr. Hisashima.

25        MR. BREINER:  I have reviewed it, Your Honor.  Yes.

49

1    THE COURT: Okay. You identified your signature?

2    MR. BREINER: I have, yes.

3    THE COURT: And your client identified his earlier.

4    MR. BREINER: That's correct.

5    THE COURT: Okay. And that's the original document.

6    We will file that.

7    Now, are there any other matters to come before the

8    court with respect to this case?

9    MR. BREINER: No, Your Honor.

10    MR. BRACCO: Mittimus is forthwith?

11    THE COURT: Well, yes, he's in custody, so mittimus

12    forthwith.

13    MR. BREINER: Nothing further, Your Honor.

14    THE COURT: Okay. Thank you.

15    Now, rather than recess, it's just a matter of which

16    case we're going to do next. I do think that Mr. Barbee's case

17    might take less time. Might make more sense to do that one

18    first.

19    MR. BREINER: Is my client excused?

20    THE COURT: Yes, yes, we are in recess with respect to

21    that case. Thank you.

22    (The proceedings concluded at 4:05 p.m., March 28,

23    2005.)

24

25

1          COURT REPORTER'S CERTIFICATE

2

3          I, CYNTHIA TANDO FAZIO, Official Court Reporter,

4    United States District Court, District of Hawaii, Honolulu,

5    Hawaii, do hereby certify that the foregoing pages numbered 1

6    through 49 is a correct transcript of the proceedings had in

7    connection with the above-entitled matter.

8

9          DATED at Honolulu, Hawaii, September 30, 2005.

10

11                    _____

12                    CYNTHIA TANDO FAZIO, RMR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25